UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MARC D. FERGUSON,

    Plaintiff,

v.               CAUSE NO. 3:19-CV-165 DRL

NANCY A. BERRYHILL,
Commissioner of Social Security,

    Defendant.

OPINION AND ORDER

  Plaintiff Marc Ferguson seeks judicial review of the Social Security Administration's decision denying his application for disability and disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI. *See* 42 U.S.C. § 423(a). Mr. Ferguson requests remand of his claim for further consideration. Having reviewed the underlying record and the parties' arguments, the court REMANDS the case back to the administrate law judge.

BACKGROUND

  On September 28, 2015, Mr. Ferguson filed an application for Social Security disability insurance benefits and for supplemental security income, asserting that he has been disabled since April 23, 2015. ECF 11 at 18. These claims were initially denied on February 11, 2016 and upon reconsideration on April 12, 2016. *Id.* On November 2, 2017, a hearing was held before Administrative Law Judge Robert Long. *Id.* On February 21, 2018, the ALJ entered a decision denying Mr. Ferguson benefits. *Id.* at 26. That same day, Mr. Ferguson challenged the ALJ's decision by timely filing a request for review of hearing decision with the Appeals Council. *Id.* at 5. The Appeals Council denied review on January 10, 2019. *Id.* Because the Appeals Council denied review of the ALJ's unfavorable decision, that ALJ decision is the final decision of the agency. *See* 20 C.F.R. § 404.981.

Thereafter, Mr. Ferguson timely filed his complaint to this court. Mr. Ferguson also filed an opening brief. The Social Security Commission timely filed a response, and Mr. Ferguson then replied. The issues are fully ripe for decision.

STANDARD

The court has authority to review the Council's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence that "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge between the evidence and her conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do her impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed by the Secretary as conclusively disabling, given the claimant's residual functional capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform any other work in the national economy given her age, education and

work experience. *See Young v. Secretary of Health & Human Servs.,* 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, where the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See id.*

Here, the ALJ found that Mr. Ferguson satisfied step one by not being currently employed in substantial gainful activity. ECF 11 at 20. The ALJ then found that Mr. Ferguson satisfied step two because he had several severe impairments, including coronary artery disease and myocardial infarction, status-post successful stent placement on the right coronary artery with a history of alcohol abuse. *Id.* Next, the ALJ found that Mr. Ferguson's impairments did not meet or exceed any of the specific impairments listed that are so severe as to be conclusively disabling. *Id.* at 21. The ALJ then proceeded to formulate the following Residual Functional Capacity (RFC):

> [C]laimant has the residual functional capacity to lift and carry up to 20 pounds occasionally, 10 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday with normal breaks. The claimant can only occasionally climb ladders, ropes, or scaffolds, ramps or stairs, balance, kneel, crouch, or crawl. He is limited to only occasional exposure to temperate extremes, humidity, pulmonary irritants such as fumes, odors, dusts, gases, or poor ventilation. Due to concentration deficits, the claimant is incapable of performing work with an hourly or less quota requirement. Due to attention issues, the claimant is limited to work in an environment with moderate noise levels such as that of a retail establishment.

*Id.* at 22. The ALJ determined, based on his RFC findings, that Mr. Ferguson was able to continue performance of his past relevant work, specifically as a sales person or general hardware worker (DOT 279.357-050 with an SVP of 4). *Id.* at 25. Because of the ALJ's determination at step four, the ALJ denied Mr. Ferguson benefits.

There is only one issue for the court to decide: whether the ALJ's finding at step four that Mr. Ferguson can perform past relevant work is supported by substantial evidence. The court finds that the record lacks substantial evidence to support the ALJ's finding and that remand is necessary.

A claimant will be found to be "not disabled" at step four if it is determined that: (1) the claimant retains the residual functional capacity to perform "the actual functional demands and job

duties of a particular past relevant job;" or (2) the claimant has the capacity to perform the "functional demands and job duties of the occupation as generally required by employers in the national economy." SSR 82–61 (1982).

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy.

S.S.R. 82-62 (1982); *Kuykendall v. Astrue*, 2009 U.S. Dist. LEXIS 107864, 10-11 (S.D. Ind. 2009).

The step four determination has "far-reaching implications and must be developed and explained fully in the disability decision" and "every effort must be made to secure evidence that resolves the issue as clearly as circumstances permit." S.S.R. 82-62 (1982). In making findings regarding the physical and mental demands of a claimant's past relevant work, the ALJ must assess the "details of the job's demands, including strength, endurance, manipulative ability, and mental requirements." *Id.* This information should be obtained from a detailed description of the work obtained from the claimant, employer, or other informed source. *Id.* Finally, "[t]he rationale for a disability decision must be written . . . [and] [t]he rationale must follow an orderly pattern and show clearly how specific evidence leads to a conclusion." *Id.*

In this case, Mr. Ferguson argues that the ALJ erred by relying on a misclassification of his past relevant work and failed to consider the opinion of the state agency's vocational specialist. ECF 15 at 16. Mr. Ferguson claims that the "vocational expert's classification of his past work as 'Sales Person/General Hardware Worker' is not an accurate reflection of his past work as described in his testimony or as classified by the state agency's vocational specialist." *Id.* (parenthetical omitted). He

contends that remand is necessary so the ALJ may consider the opinion of the state agency vocational specialist in classifying his past relevant job. ECF 20 at 3.

There is no dispute that Mr. Ferguson worked as a "manager" at a hardware store from August 2010 to June 2013. ECF 11 at 238; ECF 15 at 13; ECF 17 at 3. Instead, Mr. Ferguson argues that the ALJ failed to consider competing evidence in the record that showed that Mr. Ferguson's job duties more closely resembled those of a stock clerk, as opposed to a sales person. ECF 15 at 16.

The record is replete with descriptions of Mr. Ferguson's past role as a manager at a hardware store. In a call between Mr. Ferguson and the Indiana Disability Determination Service (DDS), the DDS employee asked Mr. Ferguson about his past vocational information *See* ECF 11 at 252. The employee at DDS recorded the details of his phone call with Mr. Ferguson in a "Report of Contact" form. *Id.* When describing Mr. Ferguson's past work at a hardware store, the DDS employee stated that Mr. Ferguson was a "[m]anager: . . . unloading delivery truck[s] twice a week" along with several other duties including opening and closing the store. *Id.*

In another phone call conversation with a DDS employee, Mr. Ferguson and the DDS employee "[d]iscussed [Mr. Ferguson's] job details for Manager position . . . [and Mr. Ferguson] said that on Mondays and Wednesday his primary job was unloading trucks, [which] would take all day." *Id.* at 255. On "[o]ther days [Mr. Ferguson] was out on the floor assisting customers, helping them locate products, answering questions about different hardware products." *Id.* Later that day, after the "Report of Contact" was completed by the DDS employee, a state agency vocational specialist concluded that Mr. Ferguson's position as a manager from August 2010 to June 2013 "more closely equates with [DOT] 299.367-014 H4." *Id.* at 254. That provision of the *Dictionary of Occupational Titles* (DOT) corresponds with the occupation of "Stock Clerk."

At the hearing before the ALJ, Mr. Ferguson testified that he "unloaded trucks twice a week on that job [in the hardware store]" and on other days was still required to lift some heavy objects,

5

like bags of concrete, and carry them to customers' cars. ECF 11 at 49. The vocational expert, noting some confusion with Mr. Ferguson's duties at the hardware store, asked Mr. Ferguson, "so, I mean you're not like a stock person, you're a salesperson but you had to do some of the lifting," and Mr. Ferguson responded "yes." *Id.* at 53-54. From this conversation, it is apparent the vocational expert was questioning Mr. Ferguson about his past duties while on the sales floor of the store, yet it is unclear whether the vocational expert considered Mr. Ferguson's two days a week he spent unloading trucks. Later in the hearing, the vocational expert stated, "I guess I would place that [job] under sales person general hardware DOT 279.357-050, the Dictionary lists the position [as] light physical demand with an SVP 4, semi-skilled and based on [Mr. Ferguson's] description, [he] performed [it] at times to the heavy demand level." *Id.* at 55. The vocational expert testified that Mr. Ferguson could perform the work of a sales person/general hardware worker, not as Mr. Ferguson actually performed it in the past, but as it is generally performed in the national economy. *Id.* at 55-57.

The ALJ ultimately found that Mr. Ferguson's residual functional capacity supported his ability to continue performance of past relevant work as a sales person/general hardware worker. ECF 11 at 25. The ALJ stated that Mr. Ferguson's "past work includes the following: sales person/general hardware worker (279.357-050 with an SVP of 4), defined in the Dictionary of Occupational Titles as light exertional work but performed by the claimant at the heavy exertional level." *Id.* In reaching this decision, the ALJ stated in his opinion that he relied on the independent vocational expert's hearing testimony. "These past work duties are allowed within the reasonable parameters of the residual functional capacity, as affirmed by independent vocational expert Thomas Gusloff's hearing testimony, which is relied upon and accepted in accordance with Social Security Ruling 00-4p." *Id.*

In short, it is unclear whether the ALJ considered Mr. Ferguson's statements at the hearing, the documents found in the record describing Mr. Ferguson's job duties at the hardware store, and the opinion of the state agency's vocational specialist.

6

When deciding whether a claimant is disabled, an ALJ "may not simply ignore evidence," *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009), especially not "entire lines of contrary evidence." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (internal citations omitted). This circuit has said that it will uphold an ALJ's credibility finding if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Myles,* 582 F.3d at 676. If the court is unable to discern whether the ALJ considered the record as a whole, remand is necessary. *Id.* at 677; *Zurawski v. Halter*, 245 F.3d 881, 888-89 (7th Cir. 2001); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (an ALJ "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding"); *see also Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996) (the ALJ must "sufficiently articulate his assessment of the evidence to assure [this court] that the ALJ considered the important evidence . . . [and to enable it] to trace the path of the ALJ's reasoning") (quotations omitted). Even though a claimant bears the burden of proving disability, it is the ALJ's obligation to develop the record. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009).

In this respect, the record appears less than fully developed. From Mr. Ferguson's statements at the hearing, the documents found in the record describing his job duties at the hardware store, and the opinion of the state agency's vocational specialist, a line of crucial evidence merited discussion vis-à-vis Mr. Ferguson's past role at the hardware store. Mr. Ferguson specifically testified that he spent two days of the week solely dedicated to unloading trucks and on the other days he often was required to carry heavy objects, like bags of concrete, to customers' cars. ECF 11 at 49. As opined by the state agency vocational specialist, his duties appeared to meet the position of stock clerk, as opposed to a salesperson/general hardware worker, or at least the record merited its full consideration to ensure the logical bridge from the record to the ALJ's decision. *See Dictionary of Occupational Titles,* "Stock Clerk" ("Receives, opens, and unpacks cartons or crates of merchandise; . . . [s]tocks storage areas and displays with new or transferred merchandise; . . . [m]ay pack customer purchases in bags or cartons

7

[and] [m]ay transport packages to specified vehicle for customer.); *cf. Dictionary of Occupational Titles,* "Salesperson, General Hardware Worker" ("Sells hardware; . . . [a]dvises customer on tools, hardware, and materials needed; . . . [i]nforms customer about quality of tools"). Nowhere in the record does the ALJ or the vocational expert discuss Mr. Ferguson's job duties that aligned more with the DOT's definition of a stock clerk.

At the bare minimum, Mr. Ferguson performed a job that included a combination of duties of those of a "stock clerk" and a "salesperson, general hardware worker." Composite jobs "have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case." S.S.R. 82-61 (1982). The ALJ and vocational expert never considered that Mr. Ferguson may have worked a composite job. In *Ray v. Berryhill,* 915 F.3d 486, 491 (7th Cir. 2019)*,* the Seventh Circuit remanded a case where the claimant's testimony showed that he performed significant elements of two different jobs when the ALJ assigned the claimant only one corresponding job found in the DOT. The court relied just on the claimant's testimony at the ALJ hearing to determine that the claimant's job was a composite job, and noted that the vocational expert's testimony was ambiguous. *Id.* at 492. "[I]f the prior position was a composite job, then the ALJ may not reference it when determining whether a claimant can perform his past job as it is generally performed." *Id.* at 491.

In this case, the ALJ decided to apply the DOT's "salesperson/general hardware worker" definition to Mr. Ferguson's past job at the hardware store. In light of the significant contrary evidence that remained seemingly untouched, the court cannot say that substantial evidence in the record supports the determination. Instead, there are at least four times in the record that Mr. Ferguson's role at the hardware store sounds more like that of a stock clerk or a composite job: (1) Mr. Ferguson's testimony that he "unloaded trucks twice a week on that job [in the hardware store]" and on other days was still required to lift some heavy objects like bags of concrete and carry them to customers'

8

cars (ECF 11 at 49); (2) a report of contact filled out by a DDS employee that described Mr. Ferguson's past work at a hardware store as a "[m]anager: . . . unloading delivery truck[s] twice a week" along with several other duties including opening and closing the store (*Id.* at 252); (3) another report of contact filled out by a DDS employee that stated he "[d]iscussed [Mr. Ferguson's] job details for Manager position . . . [and Mr. Ferguson] said that on Mondays and Wednesday his primary job was unloading trucks, [which] would take all day" and on "[o]ther days [Mr. Ferguson] was out on the floor assisting customers, helping them locate products, answering questions about different hardware products" (*Id.* at 255); and (4) a state agency vocational specialist's opinion that Mr. Ferguson's position as a manager from August 2010 to June 2013 "more closely equates with [DOT] 299.367-014 H4" (*Id.* at 254).

Despite all this evidence pointing to a stock clerk or composite job, the ALJ relied on Mr. Ferguson's past job at the hardware store to determine that Mr. Ferguson could perform that job as generally performed in the economy (at a light demand level). However, "if the prior position was a composite job, then the ALJ may not reference it when determining whether a claimant can perform his past job as it is generally performed." *Ray,* 915 F.3d at 491. Thus, the ALJ erred, and the case must be remanded so the ALJ can further consider Mr. Ferguson's past duties at the hardware store, taking into consideration all the evidence.

Further calling for remand, Mr. Ferguson argues that there was a conflict between the DOT and the vocational expert's opinion. ECF 15 at 18. S.S.R. 00-4p provides that before an ALJ relies on vocational experts or vocational experts, the ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the *Dictionary of Occupational Titles* (DOT) . . . and [e]xplain in the determination or decision how any conflict that has been identified was resolved." At the hearing with the ALJ, the ALJ specifically asked the vocational expert "has your testimony been consistent with the information provided in the Dictionary of Occupational Titles and/or its companion publication the Selected Characteristics of

9

Occupations?" ECF 11 at 57. The vocational expert responded, "[i]t's consistent on physical postural, environmental and noise limitations, questions related to an hourly quota. I based my answers on reviewing the job task requirements as listed in the Dictionary, question about additional breaks would be based on experience with job placement over the past 30 years." *Id.* at 57-58. But "SSR 00-4p imposes an affirmative duty on the ALJ to inquire into and resolve apparent conflicts" between the vocational expert's testimony and the DOT. *See Overman v. Astrue,* 546 F.3d 456, 463 (7th Cir. 2008). It was apparent that the vocational expert's testimony was inconsistent with Mr. Ferguson's testimony. Unloading trucks twice a week is not included in the definition of "salesperson, general hardware worker" nor is lifting heavy bags of concrete and carrying them to customers' cars. Whether the ALJ ultimately decided that Mr. Ferguson performed a past job as a "salesperson, general hardware worker" rather than a "stock clerk" is irrelevant for purposes of S.S.R. 00-4p. What matters is that the ALJ did not identify the conflict, offer a reasonable explanation for resolving it, or develop the record in full. *Id.; see also Nelms*, 553 F.3d at 1098.

The lack of development and full explanation of the reasons for deciding that Mr. Ferguson had past relevant work as a salesperson/hardware worker had "far-reaching implications." S.S.R. 82-62 (1982). Had the ALJ found that Mr. Ferguson's past relevant work experience included a position more equivalent to a stock clerk, rather than salesperson, then a finding of disability may have been warranted. As Mr. Ferguson points out in his brief, individuals of advanced age who can no longer perform relevant past work and have no transferable skills may be considered disabled. Appendix 2 to Subpart P of 20 C.F.R. 404 § 202(c); ECF 15 at 24. At the hearing, Mr. Ferguson's attorney wisely asked the vocational expert about Mr. Ferguson's transferability of skills, which the expert responded and said, "no transferability of skills." ECF 11 at 58. Thus, it is conceivable that Mr. Ferguson would have been found disabled had the ALJ considered Mr. Ferguson's past job at a hardware store as equating to either a stock clerk or a composite job. That is not this court's conclusion or its role at

this stage; that possibility must be fully developed. The ALJ's failure to create an "accurate and logical bridge between the evidence and her conclusion" requires remand of this case. *See Thomas*, 745 F.3d 802 at 806.

## CONCLUSION

The court finds that the ALJ's finding at step four is not supported by substantial evidence in the record. The ALJ failed to consider Mr. Ferguson's own testimony at the hearing, along with reports of contacts with the Indiana DDS and the opinion of the DDS' vocational specialist. The court REMANDS the case so the ALJ can reconsider step four in light of this evidence, and make an inquiry at step five, if necessary.

SO ORDERED.

January 21, 2020               *s/ Damon R. Leichty*
                               Judge, United States District Court